IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEFANIE WESEMAN,

               Plaintiff,                        CV-06-1338-ST

     v.                                FINDINGS AND
                                     RECOMMENDATION

WELLS FARGO HOME MORTGAGE, INC., a
California Corporation,

_____Defendant._____

STEWART, Magistrate Judge:

## **<u>INTRODUCTION</u>**

Plaintiff, Stefanie Weseman ("Weseman"), alleges that defendant, Wells Fargo Home

Mortgage, Inc. ("Wells Fargo"), attempted to collect an allegedly delinquent debt from her

which was not, in fact, delinquent and improperly verified the debt with various credit reporting

agencies.  As a result, she has been unable to obtain other financing and has suffered emotional

damages.

1 - FINDINGS AND RECOMMENDATION

The Amended Complaint alleges claims against Wells Fargo for willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 USC § 1681s-2(b) (Counts I and II), and negligence (Count III), as well as claims against Equifax, Inc., for willful and negligent violations of the FCRA, 15 USC § 1681i (Counts IV and V).[1]  This court has jurisdiction pursuant to 15 USC § 1681p.

Wells Fargo has filed a motion for summary judgment against the FCRA and negligence claims (docket #60).  For the reasons set forth below, that motion should be granted.

## LEGAL STANDARDS

FRCP 56(c) authorizes summary judgment if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law."  The moving party must show an absence of an issue of material fact.  *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986).  Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial."  *Id* at 324, citing FRCP 56(e).  The court must "not weigh the evidence or determine the truth of the matter, but only [determine] whether there is a genuine issue for trial."  *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted).  A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact.  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir), *cert denied*, 493 US 809 (1989) (emphasis in original) (citation omitted).  The substantive law governing a claim or defense determines whether a fact is material.  *T.W. Elec. Serv., Inc. v. Pac.*

---

[1]  The Amended Complaint also named two other defendants in Counts IV and V (Experian Information Solutions, Inc., and Transunion, LLC).  However, those defendants have been dismissed pursuant to stipulation between the parties (dockets #55 & #64).

2 - FINDINGS AND RECOMMENDATION

*Elec. Contractors Ass'n*, 809 F2d 626, 630 (9th Cir 1987).  The court must view the inferences

drawn from the facts "in the light most favorable to the nonmoving party."  *Id* (citation omitted).

## UNDISPUTED FACTS

About September 3, 2003, Weseman borrowed $173,280 from Mortgage Market, Inc.

("Loan").  The servicing of the Loan was to be handled by RBC Centura Bank ("RBC").

Weseman made her first payment in November 2003 to RBC.  This was the only payment she

made to RBC on account of the Loan.

About November 15, 2003, RBC notified Weseman that the servicing of her Loan was

being transferred to Wells Fargo and that effective January 1, 2004, payments should be directed

to Wells Fargo.

Weseman made no payment for December 2003 or January 2004.  In January 2004,

Weseman received a default notice from RBC, although she was told that the Loan was with

Wells Fargo.  At about that time Mortgage Market, Inc., advised Weseman that RBC would have

to take the Loan back from Wells Fargo because it was $12,000 over the cap for an FHA loan

and would have to be rewritten as a conventional loan.

By March 2004, both RBC and Wells Fargo were sending collection notices to Weseman

and reporting the Loan as delinquent.  Beginning March 16, 2004, Weseman began contacting

Wells Fargo in an effort to confirm whether RBC or Wells Fargo had the Loan and where she

should send payment.  As early as April 2, 2004, she informed Wells Fargo that it did not own

her Loan and that RBC was going to sell, but had not sold, the Loan to Wells Fargo.

In April 2004, Wells Fargo informed RBC that the RBC would have to repurchase the

Loan because it had an "Early Payment Default" (a default within the first 90 days) and failed to

3 - FINDINGS AND RECOMMENDATION

qualify for FHA insurance.

By May 19, 2004, Wells Fargo was aware of the problem Weseman reported with the

two institutions, but continued to report the delinquent status on Weseman's credit report.

Wells Fargo received payment from RBC for the Loan on June 28, 2004.  By letter dated

June 30, 2004, both Wells Fargo and RBC notified Weseman that the servicing of the Loan was

transferred to RBC effective July 15, 2004.  Wells Fargo provided RBC with the original Note

endorsed to RBC and other documents comprising the Loan file on July 14, 2004.

At no time did any credit reporting agency advise Wells Fargo that Weseman disputed

the accuracy of the information it reported on her Loan.

## FINDINGS

## I.    FCRA Claims (Counts I and II)

Wells Fargo is a furnisher of credit information pursuant to the FCRA.  15 USC

§ 1681a(d).  The duties of furnishers of information are listed in 15 USC § 1681s-2.  That statute

imposes two general sets of duties on furnishers of credit information.  First, under 15 USC

§ 1681s-2(a), furnishers of credit information have a duty to provide accurate information to a

credit reporting agency ("CRA").  Congress did not create a private right of action for violations

of this section.  15 USC § 1681s-2(d) (such violations "shall be enforced exclusively . . . by the

Federal agencies and officials and State officials identified in that section").  Therefore,

Weseman does not allege a violation of this subsection.

Instead, in Counts I and II, Weseman alleges that Wells Fargo violated 15 USC § 1681s-

2(b) which imposes a second set of duties on furnishers of information.  Upon receipt of notice

from a CRA of a dispute as to information, the furnisher of information is required to investigate

within specified time limits to determine the accuracy or completeness of the information previously provided to the CRA.  The furnisher must report the results of that investigation to the CRA and to other nationwide CRAs to whom it had furnished the information, and must modify, delete, or block reporting of information that is inaccurate, incomplete, or cannot be verified.

The FCRA expressly creates a right of action for willful or negligent noncompliance with its requirements.  15 USC §§ 1681n & o.  However, 15 USC § 1681s-2 limits this private right of action to claims arising only under subsection (b).  In *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F3d 1057, 1060 (9th Cir 2002), the Ninth Circuit found that Congress did not want furnishers of information, such as Wells Fargo, exposed to suit by every dissatisfied individual contesting the veracity of credit information furnished.  However, the FCRA does provide a means for allowing such suits upon satisfying certain procedural prerequisites:

> [C]ongress did provide a filtering mechanism . . . by making the disputatious consumer notify a CRA and setting up the CRA to receive notice of the investigation by the furnisher.  With this filter in place and opportunity for the furnisher to save itself from liability by taking the steps required by § 1681s-2(b), Congress put no limit on private enforcement under §§ 1681n & o.

*Id.*

Thus, a private right of action against a furnisher of credit information exists only if the consumer has notified a CRA of a dispute in the first instance.  Under the FCRA, the CRA then has an obligation to investigate whether the claim is frivolous or irrelevant.  *See* 15 USC § 1681i(a)(3).  Once a claim is deemed viable, the CRA must contact the furnisher of the credit information who is then afforded the opportunity to investigate and rectify erroneous reporting entries.  *See* 15 USC § 1681s-2(b).  The furnisher's duty to investigate, however, does not arise unless and until it receives notice of the credit reporting dispute directly from the CRA.

Bypassing the CRA, as the filtering entity, and contacting the credit information furnisher directly does not actuate the furnisher's obligation to investigate under the FCRA, and does not give rise to a private right of action against the furnisher on behalf of an allegedly aggrieved consumer. *Nelson*, 282 F3d at 1060.

Therefore, for Weseman to state a claim under the FCRA against Wells Fargo as a furnisher of credit information, she must show that she contacted a CRA and that the CRA, in turn, determined the claim was viable and contacted Wells Fargo, thereby triggering Wells Fargo's duty to investigate. In the absence of such showing, Weseman lacks standing under the FCRA to pursue a private right of action against Wells Fargo. *See Whisenant v. First Nat'l Bank & Trust Co.*, 258 F Supp2d 1312, 1316 (ND Okla 2003) ("Courts have consistently held that a furnisher's duty under § 1681s-2(b) is triggered only after the furnisher receives notice of the dispute from a consumer reporting agency."). Notification from the consumer alone is insufficient. *Lowe v. Surpas Res. Corp.*, 253 F Supp2d 1209, 1253-54 (D Kan 2003) (collecting cases).

The parties disagree whether Weseman disputed the Wells Fargo Home Mortgage Account on her credit report. Weseman claims that on November 25, 2005, she filed a dispute with a CRA, namely online with Equifax, as evidenced by a confirmation which she printed directly off of her computer. Affidavit of Stefanie Weseman, ¶¶ 2-4 & Ex. A. However, the print-out makes no mention of any particular debt being disputed, the reason for the dispute or even the name of the creditor. It simply advises of the procedures followed by Equifax in the event a dispute is filed. Weseman has submitted no other communication to or from Equifax, including the results of any investigation by Equifax. To the contrary, Wells Fargo has

6 - FINDINGS AND RECOMMENDATION

submitted evidence from Equifax that it received no dispute from Weseman concerning a Wells Fargo Home Mortgage debt. Declaration of Latonya Munson, ¶ 3.

Even if Weseman's self-serving and unsupported declaration is deemed sufficient to prove that she contacted Equifax, there is absolutely no evidence that Equifax notified Wells Fargo directly of the purported inaccuracies, and Wells Fargo denies receiving any such notice. Declaration of Melanie J. Broich, ¶ 10. Weseman has had the opportunity to take depositions and obtain business records from Wells Fargo and the CRAs. Yet Weseman has produced not one scintilla of evidence that any CRA notified Wells Fargo of Weseman's dispute. Obviously, Wells Fargo knew of Weseman's dispute, but that knowledge is not sufficient to trigger its duty under 15 USC § 1681s-(2)(b) to investigate and Weseman's corresponding right to sue Wells Fargo for any allegedly inadequate investigation and subsequent action. Instead, the only evidence is that Wells Fargo received no notice from a CRA that Weseman disputed the accuracy of the information it reported for her Loan. Thus, Wells Fargo is entitled to summary judgment under the terms of the FCRA.

## II.    Negligence Claim (Count III)

Count III alleges that Wells Fargo had a duty to perform the servicing of Weseman's mortgage "with care and in such a way that would protect [her] from harm." Amended Complaint, ¶ 6.2. Weseman "notified Wells Fargo of the confusion surrounding which mortgage company owned [her] loan" and "Wells Fargo was asked several times to rectify the confusion, knowing that [she] owed one mortgage on their property, not two." *Id* at ¶ 6.3. Although it was "reasonably foreseeable to Defendant Wells Fargo that if not corrected, this confusion surrounding the mortgage could cause damage to Ms. Weseman," Wells Fargo "failed to make

any efforts to correct the confusion and as a result Ms. Weseman suffered harm." *Id* at ¶¶ 6.3-
6.4.

Adopting the "statutory preemption" approach, this court previously held that
Weseman's negligence claim is preempted unless it falls within the narrow exception under 15
USC § 1681h(e) for credit reporting claims based on "false information furnished with malice or
willful intent to injure such consumer." Findings and Recommendation (docket #20), adopted by
Opinion and Order (docket #25). A "willful" act under the FCRA is "done knowingly or
intentionally, or is recklessly committed with a conscious disregard for the rights of others."
*Harris v. Equifax Credit Info. Serv., Inc.*, 2003 WL 23962280, *2 (D Or 2003) (internal
quotations and citations omitted). Weseman's original negligence claim did not allege that
Wells Fargo acted with malice or willful intent, allowing a reasonable fact-finder to conclude
that Wells Fargo simply made an unintentional mistake. Therefore, the court allowed Weseman
leave to amend her negligence claim that Wells Fargo furnished false information "with malice
or willful intent" to injure her.

Despite the court's directive, the Amended Complaint does not use the words "malice" or
"willful" to describe Wells Fargo's conduct. Instead, it alleges only that Wells Fargo "recklessly
failed to take Plaintiff Weseman's complaint seriously," "recklessly failed to investigate the loan
status," "without any indication of additional investigational research recklessly concluded that
there was no error," "knowingly and recklessly continued to attempt to collect on the loan that
Wells Fargo knew or should have known was not its loan," and was "reckless without regard for
Plaintiff Weseman's rights." Amended Complaint, ¶¶ 3.16-.18, 3.21. At best, Weseman alleges
only reckless behavior by Wells Fargo, which is insufficient to fall within the exemption from

preemption.

Wells Fargo also argues that Weseman has no evidence that Wells Fargo, in the course of its credit reporting, acted with any malice or willful intent to injure her. Weseman responds by pointing to several entries in Wells Fargo's Phone Collection/Customer Service Loan Activity Microfiche. Affidavit of Stephanie Weseman, Exhibit B. However, none of those entries allow a reasonable inference of malicious or willful credit reporting by Wells Fargo.

First, Weseman points to entries confirming that by March 16, 2004, she told Wells Fargo that she did not know who owned the Loan. She also told Wells Fargo on March 19, 2004, that RBC "is telling her not to pay" Wells Fargo. By that time, Weseman had received information of a problem with the Loan, requiring RBC to buy the Loan back from Wells Fargo. Perhaps she was led to believe that the Loan had not been sold by RBC to Wells Fargo and perhaps she was told by RBC not to pay Wells Fargo. Nevertheless, Weseman had received the letters from RBC dated November 15, 2003, notifying her that the Loan would be sold to Wells Fargo, and dated December 15, 2003, instructing her to make payments to Wells Fargo effective January 1, 2004. Until the Loan was actually repurchased by RBC, it could not be malicious or wilful conduct by Wells Fargo to expect payment from Weseman.

Second, Weseman relies on a comment in Wells Fargo's log dated April 28, 2004, that she was "not being honest." However, this comment follows an earlier note in the log on April 23, 2004, that Weseman reported that "her payments are with [RBC]." Wells Fargo advised her that "was not what [RBC] had told [it]," which is confirmed by Weseman's own admission that she made her first and only payment to RBC in November 2003. Therefore, Wells Fargo's comment of April 28, 2004, was not necessarily wrong.

9 - FINDINGS AND RECOMMENDATION

Third, none of these log entries has anything to do with any credit reporting by Wells Fargo.  Weseman has submitted no evidence that Wells Fargo reported any false information about her Loan, how it was false, or when or to whom it made such a report.  Therefore, the negligence claim does not fall within the narrow exception of 15 USC § 1681h(e) and is preempted by the FCRA.

## RECOMMENDATION

Wells Fargo's Motion for Summary Judgment against the FCRA claims in Counts I and II and the negligence claim in Count II (docket #60) should be granted, and Wells Fargo should be dismissed as a defendant.

## SCHEDULING ORDER

Objections to the Findings and Recommendation, if any, are due **March 27, 2009.**  If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will be referred to a district judge and go under advisement.

DATED this 11th day of March, 2009.


s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge